

**SO ORDERED.**

**SIGNED this 27 day of August, 2021.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-04934-5-DMW |
| CRYSTAL J. SCOTT | CHAPTER 7 |
|     DEBTOR | |
| | |
| GREGORY B. CRAMPTON, TRUSTEE | |
|     PLAINTIFF | |
| vs. | ADVERSARY PROCEEDING NO. |
| ANNIE MAE SCOTT | 21-00003-5-DMW |
|     DEFENDANT | |

**MEMORANDUM OPINION SUPPORTING**
**AVOIDANCE OF FRAUDULENT TRANSFER**

This matter comes before the court upon the Complaint to Recover Fraudulent Transfer ("Complaint") filed by Gregory B. Crampton, Esq. ("Plaintiff") in his capacity as Chapter 7 trustee for Crystal J. Scott ("Debtor") on January 27, 2021, seeking the avoidance and recovery of a transfer of real property from the Debtor to Annie Mae Scott ("Defendant") pursuant to 11 U.S.C. §§ 548(a)(1) and 550(a), or alternatively, pursuant to 11 U.S.C. § 544(b)(1) and N.C. Gen. Stat. § 39-23.1 *et seq*. The court conducted a trial on August 5, 2021 in Raleigh, North Carolina. The

Plaintiff appeared on his own behalf, and Philip Sasser, Esq. appeared for the Defendant. The court entered a Judgment in favor of the Plaintiff. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure,[1] this opinion recites the court's findings of fact and conclusions of law in support of the Judgment.

FINDINGS OF FACT

At the trial, the court admitted into evidence nine exhibits introduced by the Plaintiff. The Debtor, the Defendant, and Paul Stam, Esq. ("Mr. Stam") testified on behalf of the Defendant. Based upon the evidence and stipulations presented at trial and the court record, the court finds the relevant facts to be as follows:

1. The Defendant is the Debtor's mother.

2. The Defendant owns real property ("Property") located at 8008 Humie Olive Road, Apex, North Carolina. The Defendant inherited the Property from her late husband who died in 2011.

3. The Debtor grew up living in the Property, and although she left for some period of time, she has been living in the Property with the Defendant since January 2018.

4. Mr. Stam is an attorney practicing in Apex, North Carolina.

5. In or around August 2019, the Defendant consulted with Mr. Stam about estate planning. The Defendant wished to arrange for an uncomplicated transfer of the Property to the Debtor upon the Defendant's death and decided to transfer to the Debtor a joint ownership interest in the Property with survivorship rights.

---

[1] Made applicable to adversary proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

6.  At the Defendant's request, the Debtor visited Mr. Stam's office to sign paperwork related to the Defendant's plan to transfer an ownership interest in the Property to the Debtor, and when the Debtor met with Mr. Stam, he told her of the Defendant's intentions.

7.  On August 29, 2019, the Defendant executed a General Warranty Deed ("First Deed") prepared by Mr. Stam, transferring the Property from herself to herself and the Debtor as joint tenants with the right of survivorship. The First Deed was recorded with the Wake County Register of Deeds on August 29, 2019 in Book 17557, Page 2421.[2]

8.  The Defendant received no consideration from the Debtor in exchange for executing the First Deed.

9.  Soon after the execution and recording of the First Deed, the Debtor informed the Defendant that she was planning to file for bankruptcy protection. The Defendant consulted with Mr. Stam who advised that the Debtor relinquish her new ownership interest in the Property.

10. On September 17, 2019, the Debtor executed a North Carolina General Warranty Deed ("Second Deed") prepared by Mr. Stam, transferring her interest in the Property to the Defendant. The Second Deed notes that "[t]he intent of this deed is to dissolve the joint tenancy with right of survivorship and vest sole title in [the Defendant]." The Second Deed was recorded with the Wake County Register of Deeds on September 18, 2019 in Book 17578, Page 2576.

11. The Debtor received no consideration from the Defendant in exchange for executing the Second Deed.

---

[2] The First Deed incorrectly names the Debtor as Crystal Joy Scott, and on September 5, 2019, Mr. Stam executed a Notice of Typographical or Other Minor Error in Previously Recorded Instrument which clarifies that the correct spelling of the Debtor's name is Crystal Jay Scott. This notice was recorded with the Wake County Register of Deeds on September 5, 2019 in Book 17565, Page 312.

12. On October 24, 2019, the Debtor filed a voluntary petition ("Petition") for relief under Chapter 7 of the United States Bankruptcy Code,[3] and the court appointed the Plaintiff to administer the case pursuant to § 704.

13. In her Statement of Financial Affairs filed on November 5, 2019, the Debtor disclosed the transfer of her interest in the Property to the Defendant made by the Second Deed ("Transfer").

14. In her Schedules filed on November 5, 2019, the Debtor listed personal property assets totaling $22,175.00 and liabilities totaling $86,400.67.[4]

15. The Debtor's bankruptcy case was designated as a "no asset" case, and creditors were instructed not to file proofs of claim.

16. The current value of the Property is approximately $224,000.00, and the Property is encumbered by a mortgage lien of approximately $101,000.00.

CONCLUSIONS OF LAW

Jurisdiction

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

Fraudulent Transfers

Section 548(a)(1) allows a trustee to avoid a fraudulent a transfer of an interest of the debtor in property incurred within two years before the debtor's bankruptcy:

---

[3] Except for within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.
[4] The liabilities consist of secured claims totaling $13,879.00, priority unsecured claims totaling $45.32, and nonpriority unsecured claims totaling $72,476.35.

4

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>
>> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>>> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>>
>>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>>
>>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>>
>>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1).

The avoidance of a fraudulent transfer may be founded on actual fraud under § 548(a)(1)(A) or constructive fraud under § 548(a)(1)(B): "a transfer is avoidable if it was either actually fraudulent in that it '(i) had at its purpose an intent to hinder, delay or defraud the debtor's creditors,' or that it was constructively fraudulent in that it '(ii) was made while the debtor was in a precarious financial condition, and the transaction did not provide the debtor with a reasonably equivalent value in exchange for the item transferred.'" *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 755 (Bankr. E.D.N.C. 2009) (quoting 5 Collier on Bankruptcy ¶ 548.01 (15th ed. rev. 2008)). In the Complaint, the Plaintiff alleges that the Transfer was both actually and constructively fraudulent.

*Transfer of an Interest of the Debtor in Property*

Section 548(a)(1) contains two threshold requirements to avoidance of a fraudulent transfer. First, the transfer must have occurred within two years prior to the debtor's bankruptcy petition. The Transfer occurred only thirty-six days before the Petition

The second threshold requirement under § 548(a)(1) is that the transfer be of an interest of the debtor in property, meaning "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Ivey v. First Citizens Bank and Trust Co.*, 539 B.R. 77, 82 (M.D.N.C. 2015) (quoting *Askenaizer v. Wyatt (In re BeaconVision Inc.)*, 340 B.R. 674, 677 (Bankr. D.N.H. 2006) (quoting *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58 (1990))). The Plaintiff contends that the Debtor obtained a one-half undivided interest in the Property as a result of the First Deed; however, the Defendant counters that the Debtor's subsequent execution of the Second Deed a mere nineteen days later evidences that the Debtor did not accept this ownership interest and thus never held an interest in the Property.

North Carolina law on delivery and acceptance of deeds provides as follows:

> The word "deed" ordinarily denotes an instrument in writing signed, sealed, and delivered by the grantor, whereby an interest in realty is transferred from the grantor to the grantee. The requisites to the valid delivery of a deed are threefold. They are: (1) An intention on the part of the grantor to give the instrument legal effect according to its purport and tenor; (2) the evidencing of such intention by some word or act disclosing that the grantor has put the instrument beyond his legal control, though not necessarily beyond his physical control; and (3) acquiescence by the grantee in such intention. But manual possession of the instrument by the grantee is not essential to delivery. It is sufficient if the grantor delivers the writing to some third person for the grantee's benefit. Thus, there is an effective delivery where the grantor causes the written instrument to be recorded, or leaves it with the proper officer for recording with the intention that it thereby shall pass title to the grantee according to its purport and tenor, and the act of the grantor is accompanied or followed by the assent of the grantee. In such cases, assent on the part of the grantee is presumed until the contrary is shown if the conveyance be beneficial to him. This is so although the transaction occurs without the grantee's knowledge.

*Ballard v. Ballard*, 230 N.C. 629, 632-33, 55 S.E.2d 316, 319-20 (1949) (internal citations omitted). "Nevertheless, if the grantee expressly rejects delivery there is of course no acceptance." *McDevitt & St. Co. v. Seaboard Sur. Co.*, 57 F.3d 1066, 1995 WL 365833, at *5 (4th Cir. June 19, 1995). Following, the recordation of the First Deed creates a rebuttable presumption that the Debtor accepted the granted ownership interest in the Property.

Although both the Defendant and the Debtor testified at trial that the Debtor did not have knowledge of the First Deed until after its recording, the court based its findings of fact upon the Debtor's testimony at her meeting of creditors conducted pursuant to § 341 on November 25, 2019, which was significantly closer in time to the execution and recording of the First Deed. At the § 341 meeting, the Debtor told the Plaintiff that she was aware of the Defendant's desire to provide her with an ownership interest in the Property and visited Mr. Stam's office to sign associated paperwork.[5] The Debtor then told the Plaintiff that she subsequently reconsidered ownership of the Property, because she was contemplating filing for bankruptcy relief. This reconsideration is insufficient to rebut the presumption of the Debtor's acquiescence of the First Deed upon its recording with the Wake County Register of Deeds.[6]

*Actual Fraud*

In determining whether a debtor made a transfer with the intent to hinder, delay, or defraud creditors, the United States Court of Appeals for the Fourth Circuit recognizes that—

---

[5] The Debtor did not know, and the record is unclear as to what type of document the Debtor signed during this visit with Mr. Stam. Only the Defendant signed the First Deed.

[6] Had the Second Deed been a quitclaim deed rather than a general warranty deed, the court might be more persuaded that the Debtor did not accept delivery of the First Deed. A general warranty deed contains a covenant of seisin "that the grantor has title to the land conveyed at the time the deed is delivered and the covenant is breached upon delivery if the grantor does not then have title." *Riddle v. Nelson*, 84 N.C. App. 656, 658-59, 353 S.E.2d 866, 868 (1987) (citing *Newbern v. Hinton*, 190 N.C. 108, 129 S.E. 181 (1925); *Price v. Deal*, 90 N.C. 290 (1884)). A quitclaim deed, however, "conveys only the interest of the grantor, whatever it is, no more and no less." *Heath v. Turner*, 309 N.C. 483, 491, 308 S.E.2d 244, 248 (1983) (citing *Hayes v. Ricard*, 245 N.C. 687, 691, 97 S.E.2d 105, 108 (1952)).

7

> [i]n the context of § 548(a)(1)(A), courts closely scrutinize transfers between related parties. Indeed, such transfers, if made without adequate consideration, create a presumption of actual fraudulent intent. This presumption establishes the trustee's prima facie case and shifts the burden to the debtor to establish the *absence* of fraudulent intent.

*Tavenner v. Smoot*, 257 F.3d 401, 408 (4th Cir. 2001) (emphasis in original) (citing *Hymen v. Porter (In re Porter)*, 37 B.R. 56, 60-61 (Bankr. E.D. Va. 1984); *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989)). Under this standard, the Debtor's transfer of her interest in the Property to her mother, the Defendant, for no consideration is presumed to have been made with actual fraudulent intent. The Debtor admittedly made the Transfer so that the Property would not be included in her bankruptcy. This motivation would ordinarily further support actual fraud; however, the situation is mitigated by the fact that the Debtor also did not pay any consideration to the Defendant when she received her interest in the Property just nineteen days prior to the Transfer. The Debtor was aware of the Defendant's desire to give her an interest in the Property for estate planning purposes, but the Debtor did not request or instigate the Defendant's execution of the First Deed and most likely did not realize the ramifications of the Property being part of her anticipated bankruptcy estate until it was too late. The court concludes that the Debtor did not make the Transfer with an actual intent to defraud her creditors but rather to protect what she considered her mother's property.

*Constructive Fraud*

Although the court declines to find that the Transfer was actually fraudulent, the court easily finds the Transfer to be constructively fraudulent. The Debtor's Schedules evidence that she was insolvent at the time of the Petition within the meaning of § 101(32), and given the short amount of time between the Transfer and the Petition, the court can only conclude that she was insolvent at the time of the Transfer or became insolvent as a result of the Transfer. The Debtor

also did not receive a reasonably equivalent value in exchange for her interest in the Property; therefore, the court must avoid the Transfer pursuant to § 548(a)(1)(B).

## CONCLUSION

With the avoidance of the Transfer under § 548(a)(1)(B), the court need not consider the Plaintiff's alternate allegations under § 544(b)(1) and N.C. Gen. Stat. § 39-23.1 *et seq.*[7] The Plaintiff is entitled under § 550(a)[8] to recover from the Defendant the Debtor's transferred interest in the Property or the value of that interest. The court cautions that due to the jointly owned nature of the Property prior to the Transfer, the Plaintiff may be required to initiate another adversary proceeding against the Defendant under § 363(h) to liquidate the estate's interest in the Property. The court is staying its Judgment until November 15, 2021, which is after the Debtor's creditors are afforded an opportunity to file proofs of claim in the bankruptcy case. This stay allows the parties to know what amount of recovery is necessary and perhaps will promote a settlement which will avoid further costs and litigation and enable the Defendant to retain the Property.

END OF DOCUMENT

---

[7] The court notes that although the Plaintiff alleged in the Complaint that the Transfer is avoidable under North Carolina's adoption of the Uniform Voidable Transactions Act, available to the Plaintiff through the strong arm powers provided by § 544, these statutes were not included in the prayer for relief, and the Plaintiff did not present associated arguments at the trial.

[8] This subsection provides as follows:
Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of the property from—
  (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
  (2) any immediate or mediate transferee of such initial transferee.
11 U.S.C. § 550(a).